IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| FLEXIWORLD TECHNOLOGIES, INC., | § § § § § | |
| *Plaintiff,* | § | |
| v. | § § | CIVIL NO. 6:20-CV-00553-ADA |
| AMAZON.COM, INC., AMAZON.COM SERVICES LLC, AMAZON WEB SERVICES, INC., | § § § § § | |
| *Defendants.* | § | |

## ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE

Before the Court is Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Web Services, Inc.'s (collectively, "Amazon") Motion to Transfer Venue Under 28 U.S.C. § 1404(a) to the Western District of Washington. ECF No. 54. Plaintiff filed its Response on June 22, 2021. ECF No. 81. Defendants filed their Reply on July 13, 2021. ECF No. 89. For the reasons set forth below, the Court **GRANTS** Defendants' Motion.

## I. BACKGROUND

Plaintiff Flexiworld Technologies, Inc. filed this lawsuit on June 22, 2020, alleging that Amazon infringes United States Patent Nos. 8,332,521; 8,989,064; 9,110,622; 10,133,527; 10,140,072; 10,162,596; 10,387,087; 10,481,846; 10,489,096; and 10,642,576 (collectively, the "Patents-in-Suit"). Pl.'s Compl., ECF No. 1 at ¶ 22. Flexiworld claims Amazon "fail[ed] to obtain permission" to make, use, sell, offer to sell, or import "products incorporating Plaintiff's inventions." *Id.* at ¶ 89. Among these allegedly infringing products are Amazon's "Echo Buds, Echo Devices, Echo Show Devices, Fire Tablets, and/or Fire TV Devices." *Id.* at ¶ 82.

Amazon filed this Motion requesting that the case be transferred from the Western District of Texas ("WDTX") to the Western District of Washington ("WDWA") on December 15, 2020. Defs.' Mot. at 1. Flexiworld is a Washington corporation with its principal place of business in Vancouver, Washington. Pl.'s Compl. at ¶ 2. Amazon.com, Inc., Amazon.com Services, Inc., and Amazon Web Services, Inc. are all Delaware corporations sharing a principal place of business in Seattle, Washington. Defs.' Am. Answer, ECF No. 73 at ¶¶ 3–5. Both cities, Vancouver and Seattle, are within the WDWA. Defs.' Mot. at 1.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. Section 1404(a) places discretion in the district court to consider the convenience and fairness of motions to transfer on a case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988). The burden to prove by good cause that a case should be transferred for convenience falls squarely on the moving party. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) ("*Volkswagen II*") ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

As a threshold matter under § 1404(a), a court must determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If this requirement is met, "[t]he determination of 'convenience' turns on a number of public and

private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

The private factors a court considers are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

Courts evaluate these factors based on the situation that existed at the time of filing the lawsuit, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S. Ct. 1084, 4 L. Ed. 2d 1254 (1960); *EcoFactor, Inc. v. Google LLC*, No. 6-20-CV-00075-ADA, 2021 WL 1535413, at *1 (W.D. Tex. Apr. 16, 2021). Additionally, the weight the Court gives to each of these factors will necessarily vary from case to case. *Burbank Int'l Ltd. v. Gulf Consol. Int'l Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977).

While a plaintiff's choice of venue is not itself a factor in the venue transfer analysis, *VLSI Tech. LLC v. Intel Corp.*, No. 6:19-CV-00254-ADA, 2019 WL 8013949, at *2 (W.D. Tex. Oct. 7, 2019), a plaintiff's selection of venue is entitled to deference. *Vasquez v. El Paso II Enterprises, LLC*, 912 F. Supp. 2d 445, 447 (W.D. Tex. 2012). However, the deference given to a plaintiff's choice of venue can be overcome if a transferee venue is clearly more convenient than the venue chosen by the plaintiff. *Volkswagen II*, 545 F.3d at 315 ("[W]hen the

transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."). While "clearly more convenient" is not equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118-JRG, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## III. ANALYSIS

The threshold determination under Section 1404(a) is whether this case could initially have been brought in the destination venue—the Western District of Washington. In actions for patent infringement, venue is proper "where the defendant resides" or "has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). All Amazon Defendants share a principal place of business at 410 Terry Avenue North, Seattle, Washington. Defs.' Am. Answer at ¶¶ 3–5. Fittingly, Amazon states in its Motion that venue is proper in the WDWA and that this case could have been brought there. Defs.' Mot. at 5. Flexiworld does not dispute that this case could have been brought in the WDWA. *See generally*, Pl.'s Resp. Thus, the Court will proceed with its analysis of the private and public interest factors.

### A. The Private Interest Factors Favor Transferring to the Western District of Washington.

#### i. The Relative Ease of Access to Sources of Proof Factor Favors Transfer

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.

Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Additionally, courts "look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017).

Under Fifth Circuit precedent, the physical location of electronic documents does affect the outcome under this factor. *See Volkswagen II*, 545 F.3d at 316. However, this Court[1] has stressed, and continues to lament, focusing on the physical location of electronic documents. *Fintiv, Inc.*, 2019 WL 4743678, at *8. This practice grows more and more nonsensical in light of modern patent litigation and technology. *See Uniloc 2017 LLC v. Apple Inc.*, No. 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020) ("[A]ll (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party [can] produce[] these documents.").

In its Motion, Amazon argues that this factor favors transfer to the WDWA because the relevant design and development documentation "is most easily accessible" in Seattle and the San Francisco Bay Area. Defs.' Mot. at 6. Amazon further notes that its records and documents relating to marketing and finances for the accused products are also located in Seattle, Washington. *Id.* at 7. Amazon also references the Bluetooth Special Interest Group ("Bluetooth SIG"), a witness it believes possesses relevant documents "given that much of the accused

---

[1] Other courts in the Fifth Circuit have similarly observed that access to documents stored and made available electronically provides little benefit in determining whether a particular venue is more convenient than another. *See Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-CV-642-JRG, 2017 U.S. Dist. LEXIS 229560, at *17 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms.").

wireless communication in the accused products is Bluetooth." *Id.* at 4; Defs.' Reply at 7. Because the Bluetooth SIG is only located in Kirkland, Washington, Amazon expects that its documentary evidence will also be found in Kirkland, also within the WDWA. Defs.' Mot. at 4. Lastly, Amazon asserts that Flexiworld "does not appear to conduct any business in Texas." *Id.* Further, Amazon maintains that because Flexiworld, its founder, and the inventor of the Patents-in-Suit, Mr. Chang, all reside in the WDWA, Plaintiff's relevant documents would likely be found in the WDWA. *Id.*

In Response, Flexiworld, noting that relevant Amazon documents are stored on readily accessible serves in Oregon and Virginia, argues that these documents provide "little benefit in determining whether a particular venue is more convenient than another." Pl.'s Resp. at 3 (quoting *Broadband iTV, Inc. v. DISH Network L.L.C.*, No. 6-19-CV-00716-ADA, 2021 WL 1566455, at *3 (W.D. Tex. Apr. 20, 2021)). Flexiworld contends the easy access to the documents stored on those servers does not support finding the WDWA more convenient than the WDTX. *Id.* As to the location of Flexiworld's documents, they are "in cloud storage." Pl.'s Resp. at 3. "Flexiworld does not know the physical location of the servers that store these documents." *Id.* Flexiworld asserts that because its relevant documents are equally accessible from either forum, the location of its documents is neutral. *Id.* at 4.

Flexiworld proceeds to list third-party documents that are stored within or closer to this District than Washington. *Id.* ████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████ *See id.* Second, Texas Instruments ("TI") is brought into the fracas because Flexiworld asserts that TI "maintains technical and financial information at its Lewisville, Texas datacenter regarding a number of

relevant components in several of the accused Echo products." *Id.* "These components are relevant to at least the microphone, voice activated command interface, and sound output limitations of the '072 asserted claims. *Id.* at 5. Lastly, Flexiworld references several other "third-parties with potentially relevant information," including MediaTek, Qualcomm, Broadcom, and the Wi-Fi Alliance, all of whom have locations in the WDTX. *Id.* Accordingly, Flexiworld contends the location of third-party documents weighs against transfer. *Id.*

In its Reply, Amazon highlights Flexiworld's inability to pinpoint the physical location of the servers containing its electronic documents. Defs.' Reply at 2. As to its documents, Amazon discloses they are "maintained out of various Amazon offices" but are on servers easily accessible from either forum. *Id.* Amazon also asserts that "none of Amazon's servers storing technical or financial information or source code related to this case are located in WDTX." *Id.*

Regarding the third-party documents asserted by Flexiworld, Amazon contends that none are relevant. *Id.* at 3. As to Amazon's Tap product, Amazon argues that the device is not relevant because it was not in Flexiworld's Complaint. *Id.* Amazon similarly contends that Flexiworld failed to demonstrate the relevance of NXP and TI because the patent claims "recite a generic processor" and failed to show how any design information from NXP's processor is pertinent to the Tap claim. *See Id.* Regarding TI, Amazon emphasizes that Flexiworld did not invent or modify the components Flexiworld identifies and "recites such devices using generic . . . language." *Id.*

As to the set of "third-parties with potentially relevant information," Pl.'s Resp. at 5, Amazon contests their relevance because "Flexiworld does not purport to have invented as such wireless technology." Defs.' Reply at 3. Amazon states that "the patents merely reference wireless communication generically or identifies pre-existing wireless technologies." *Id.* Lastly,

regarding the Wi-Fi Alliance, Amazon contends that Flexiworld again failed to identify the relevance of any information from the Wi-Fi Alliance "given Amazon's own documents . . . state that its products communicate using Wi-Fi." *Id.* at 4. In summary, Amazon asserts Flexiworld has not shown the relevance of any of the companies identified to the Court. *Id.* at 3–4.

The Court first addresses the location of each party's relevant documents and records. Both parties have affirmed that their documents are on servers that are readily accessible in either forum. Pl.'s Resp. at 3; Defs.' Reply at 2. However, the question before the Court is not about *accessibility* but instead *location*. To the extent that the physical location of the servers containing the documents still has much weight, the Court has been informed that Amazon has servers containing relevant documents in Oregon, Pl.'s Resp. at 3, while Flexiworld is unaware of the physical location of the servers that store its documents. *Id.* Furthermore, none of Amazon's servers keeping technical or financial information related to this case are located in WDTX. Defs.' Reply at 2.

As to the third-party documents raised by Flexiworld, the Court finds them irrelevant. Regarding Amazon's Tap product, a court looks to the facts as they existed at the time of filing the lawsuit in the venue analysis. *EcoFactor, Inc.*, 2021 WL 1535413, at *1. Because the Tap product was not raised in the Complaint, *see* Pl.'s Compl., it is not applicable to the instant Motion. Furthermore, as to TI and NXP, citing to generic and pre-existing components that Flexiworld did not invent or modify, Defs.' Reply at 3, is not relevant.

The Court reaches the same conclusion for the "third-parties with potentially relevant information," Pl.'s Resp. at 5, including MediaTek, Qualcomm, Broadcom, and the Wi-Fi Alliance. Whatever relevant documents these third-parties may have, because of the similar generic components Flexiworld cites regarding these third-parties, that it again did not invent or

8

modify, their inclusion cannot outweigh the fact that the functionalities of the actual Patents-in-Suit were developed in or much closer to the WDWA than the WDTX. Defs.' Mot. at 6; *see XY, LLC*, 2017 WL 5505340, at \*13 (Courts "look to the location where the allegedly infringing products were researched, designed, developed and tested.").

Because Amazon has documents stored on servers closer to the WDWA with none in the WDTX, along with no relevant third-party documents in this District, the Court finds the first factor favors transfer.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses is Neutral

Under this factor, courts consider "the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Solas OLED Ltd. v. Apple Inc.*, No. 6:19-CV-00537-ADA, 2020 WL 3440956, at \*5 (W.D. Tex. June 23, 2020); *Fintiv, Inc.*, 2019 WL 4743678, at \*5; *Volkswagen II*, 545 F.3d at 316. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). A court may subpoena a witness to attend trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person," or "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. CV A-15-CA-0910-LY, 2015 WL 10818740, at \*4 (W.D. Tex. Dec. 16, 2015).

As party witnesses almost invariably attend trial willingly, "[w]hen no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-CV-00513 (W.D. Tex. Mar. 17,

2020) (citation omitted). However, the inconvenience of foreign witnesses, who will have to travel a substantial distance to be present in any U.S. court, is weighted less heavily than that of domestic witnesses. *See In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (citing *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) (traveling from the United Kingdom to New York was only marginally more convenient than traveling to Tennessee)); *Bionx Implants, Inc. v. Biomet, Inc.*, 1999 U.S. Dist. LEXIS 8031 at 3 (traveling from Finland to Indiana was not a greater inconvenience than traveling to New York)).

In support of establishing a relevant non-party witness within the WDWA, Amazon names Bluetooth SIG as "central to both the invalidity and infringement allegations in this case." Defs.' Mot. at 7. The Bluetooth SIG is an organization that "oversee[s] the development of the Bluetooth wireless standards and licensing of Bluetooth technologies to manufacturers." *Id.* Its headquarters (and only office) is in Kirkland, Washington. *Id.* Amazon contends that including the Bluetooth SIG is relevant because Flexiworld "cited Bluetooth related documents in its invalidity contentions," "Bluetooth-related technical papers are cited on the face of the Patents-in-Suit, and Bluetooth is mentioned several times in the specifications of the Patents-in-Suit." *Id.* at 8. Amazon further notes that nine of the ten infringement claims include citations to the Bluetooth connections in the accused products. *Id.* Amazon is not aware of any relevant third-party witnesses in the WDTX. *Id.* at 2. Accordingly, Amazon argues this factor weighs in favor of transfer. *Id.*

Flexiworld responds by noting that the Bluetooth SIG is identified by Amazon as "an alleged source of prior art" and this Court's precedent that "[b]ecause prior art witnesses are very unlikely to testify, . . . the Court gives their location 'minimal' weight." Pl.'s Resp. at 6–7; *Hammond Dev. Int'l, Inc. v. Google LLC.*, No. 1:20-CV-00342-ADA, 2020 WL 3452987, at *4

(W.D. Tex. June 24, 2020). Next, Flexiworld argues that Amazon "has not alleged, let alone demonstrated, that any witnesses from the Bluetooth SIG are unwilling to testify in Waco, Texas." Pl.'s Resp. at 7. Flexiworld then lists several third-party witnesses (the same referenced in its argument under the first private factor) that it believes are subject to the subpoena power in the WDTX but not in the WDWA. *Id.* at 6. Namely, employees of NXP relevant to Tap and employees of TI. *Id.*

In reply, Amazon argues that none of the third-party witnesses from NXP or TI are relevant because there is no need for testimony regarding generic components. Defs.' Reply at 4. Amazon also raises a new issue regarding the testimony of Mr. Chang, asserting that "[Mr. Chang] alleged that Amazon poached a Flexiworld employee, Benyi Wang, to steal Flexiworld's inventions." *Id.* at 5. Such activities are how Mr. Chang believes his inventions came to be incorporated into the alleged infringing products. *Id.* Amazon contends that Mr. Chang can only be subpoenaed to testify about these allegations if the case is transferred to the WDWA, where Chang resides. *See id.*

The Court has noted "[b]ecause prior art witnesses are very unlikely to testify, . . . [their] location is given] 'minimal' weight." *Hammond Development Int'l, Inc.*, 2020 WL 3452987, at *4. Further, the Court has held that "prior art witnesses do not weigh for or against transfer." *Id.* Amazon explicitly asserts that it intends on using the Bluetooth SIG as a source of prior art. *See* Defs.' Mot. at 8. As for the testimony of Mr. Chang, "[w]hen the movant has not alleged or shown that any witnesses are unwilling to testify, this private interest carries far less weight." *Broadband iTV, Inc.*, 2021 WL 1566455, at *3. While Amazon asserts that Mr. Chang's testimony is relevant, it does not establish or even allege that he is unwilling to testify. *See* Defs.' Reply at 5. As to NXP and TI, the Court has already noted that the Tap product was not raised in

the Complaint, and is therefore irrelevant to this Motion. Because the witnesses listed by Amazon (the Bluetooth SIG and Mr. Chang) and Flexiworld (NXP and TI) are either not relevant or provide no weight in this analysis, the Court finds this factor neutral.

### iii. The Cost of Attendance for Willing Witnesses Favors Transfer

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv, Inc.*, 2019 WL 4743678, at \*6. "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist, Inc. v. SK Hynix Am. Inc.*, 2021 U.S. Dist. LEXIS 47242 at \*19 (W.D. Tex. Feb. 2, 2021); *see Moskowitz Fam. LLC. v. Globus Med., Inc.*, No. 6:19-CV-00672-ADA, 2020 WL 4577710, at \*4 (W.D. Tex. July 2, 2020). While not necessarily dispositive, the distance a witness must travel is relevant in this analysis. *Volkswagen II*, 545 F.3d at 317 (noting that increased distance means increased inconvenience); *SITO Mobile R&D IP v. Hulu, LLC*, No. 6-20-CV-00472-ADA, 2021 WL 1166772, at \*6 (W.D. Tex. Mar. 24, 2021).

Given typical time limits at trial, the Court will not assume that all party and third-party witnesses listed in the briefing for this Motion will testify at trial. *See Fintiv, Inc.*, 2019 WL 4743678, at \*6. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial. *Id.* Therefore, long lists of potential party and third-party witnesses will not compel the outcome under this factor. *Id.*

Amazon begins its Motion by noting that the WDWA courthouse in Seattle is less than one mile from Amazon's headquarters, and the courthouse located in Tacoma is "roughly thirty-five miles away." Defs.' Mot. at 9. Amazon asserts that for Flexiworld, the courthouse in Seattle is "less than a three-hour drive from its principal place of business located in Vancouver,

Washington, which is also where its founder, president, and an inventor of the Patents-in-Suit, Mr. William Ho Chang, appears to reside. The courthouse located in Tacoma is just over a two-hour drive from Vancouver, Washington." *Id.* (citations omitted). As for travel time to this Court from Seattle, five hours of flight, and any additional time to, from, and within airports. *See id.* For witnesses from the San Francisco Bay Area, flight travel to Seattle is around two hours, while approximately five hours to Waco. *Id.* Amazon finally notes that it is not aware of any Flexiworld witnesses who are located in the WDTX. *Id.* at 10.

In its Response, Flexiworld maintains that most of Amazon's employees who have relevant knowledge are not located in Seattle and that overall, this factor weighs against transfer. *See* Pl.'s Resp. at 8, n.8; Defs.' Mot. at 12. While Flexiworld agrees that some of these locations are "slightly closer" to the WDWA, "the differences in travel times and costs of attendance . . . are insubstantial." *See* Pl.'s Resp. at 8. Flexiworld states that Mr. Chang is "willing" and would not be "inconvenienced" by attending trial in Waco. *Id.* Flexiworld then lists a host of party witnesses "in, or within 100 miles of, this District that have relevant knowledge and would be significantly inconvenienced if this case were transferred." *Id.* at 9.

Among the party witnesses Flexiworld identifies is Mr. Van Hasty, Amazon's Director of Software Connectivity, who is based in Austin, Texas. *Id.* Flexiworld claims his team is responsible for the software that allows the accused products to connect to other devices via Wi-Fi or Bluetooth. *Id.* Flexiworld also lists Mr. Bala Kumar, who is the head of Amazon's Echo team and the most senior individual in Amazon's Austin office. *Id.* at 10. Finally, Flexiworld names Mr. Joshua Pearl who is based in Boston, Massachusetts, and in charge of the Amazon group responsible for music playback on Amazon Echo. *Id.*

13

Flexiworld claims that Mr. Pearl and Mr. Kumar's teams worked with Mr. Hasty's team on the relevant music playback feature of the Amazon Echo. *Id.* Amazon argues that Flexiworld failed to provide evidence supporting its contentions and further claims the witnesses concerning Wi-Fi and Bluetooth connectivity are not relevant because Flexiworld does not allege that it invented, modified, or contributed to Wi-Fi or Bluetooth. Defs.' Reply at 6. Amazon further points out, the scope of the work done between the teams was "limited to memory and CPU utilization," neither of which is relevant to Flexiworld's infringement claims. Defs.' Reply at 7.

Regarding the remaining Amazon employees listed by Flexiworld, the Court has noted that because of the practical limitations during trial, a long list of potential witnesses will not sway this factor in either direction. As to Mr. Chang and the witnesses located at Amazon headquarters in the WDWA, the question is not whether a witness is *willing* to travel but whether it will be *convenient*. *See Fintiv, Inc.*, 2019 WL 4743678, at *6. For the majority of relevant witnesses, the Court finds traveling to the WDWA more convenient than to the WDTX. *See Volkswagen II*, 545 F.3d at 316. Regarding witnesses (party or otherwise) concerning Wi-Fi and Bluetooth connectivity, they are not relevant because Flexiworld does not allege that it invented, modified, or contributed to Wi-Fi or Bluetooth in any way. *See, supra*, Part III.A.i. Accordingly, the Court finds that factor heavily favors transferring to the WDWA.

### iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive are Neutral

When considering the fourth private interest factor, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer."

*PersonalWeb Technolgies, LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013).

Amazon argues this factor is neutral because neither venue at issue has dealt with the Patents-in-Suit before this case. Defs.' Mot. at 11. Flexiworld counters by citing co-pending litigation in this Division (*Flexiworld Technologies Inc. v. Roku, Inc.*, No. 6:20-CV-819-ADA) involving one of the Patents-in-Suit arguing that because no motion to transfer was filed in this factor weighs against transfer. *See* Pl.'s Resp. at 12. In its Reply, Amazon notes that the Court was made aware of Amazon's intent to file a motion to transfer before the filing of *Roku*. Minute Entry, ECF No. 25; Defs.' Reply at 8. Amazon argues that because the Court instructed Amazon to file its Motion to Dismiss before its Motion to Transfer, it would be unfair to consider the timing of Amazon's Motion to Transfer. Defs.' Reply at 8.

The Court is unpersuaded by Plaintiff's arguments. Plaintiff merely quotes the presence of co-pending litigation involving one of the patents-in-suit without further argument as to how the co-pending litigation would make trial of this case easy, expeditious, or inexpensive.

While the Court is aware of the co-pending *Roku* case in front of this Court, the Court does not believe that the mere fact that an unrelated defendant (Roku) declined to file a motion to transfer in a co-pending case involving the same patent weighs against transferring the instant case. The instant case was filed against Amazon not Roku and involves different accused products; therefore, the venue and transfer considerations for the cases (while sharing an asserted patent) are vastly different. An unrelated defendant's decision in an unrelated case to not file a motion to transfer cannot be extrapolated to the instant case and is not indicative of the validity of an argument against transfer here.

The Parties present some argument as to the temporal aspects of analyzing this factor at the time of filing versus at the time the Motion to Transfer was filed. The Court need not address this because even if the Court were to consider the lattermost date, the Motion to Transfer was filed on November 20, 2020. ECF No. 48. As of that date, no progression in the *Roku* case had been made. Notably, Roku's answer had been on file for less than a month. *Flexiworld Technologies Inc. v. Roku, Inc.*, No. 6:20-CV-819-ADA (ECF No. 15). Therefore, any argument as to any unique knowledge this Court might have had regarding the asserted patent fails. Therefore, the Court finds this factor neutral.

## B. The Public Interest Factors Favor Transferring to the Western District of Washington.

### i. Administrative Difficulties Flowing from Court Congestion Favor Denying Transfer

Courts evaluating this factor consider the speed with which a case can come to trial and be resolved. *In re Genentech, Inc.*, 566 F.3d at 1347. In other words, "whether there is an appreciable difference in docket congestion between the two forums." *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-CV-00108-ADA, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). Setting a speedy trial date is not necessarily dispositive of this factor. *See In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020).

Amazon attests that this Court sets quick schedules for its patent cases. Defs.' Mot. at 11. Further, Amazon cites statistics about the dockets in WDWA and the WDTX (550 patent cases in this Court, 41 patent cases in the WDWA, 3,184 civil cases in the WDTX, and 1,826 civil cases in the WDWA). *Id.* Amazon argues that these differences establish that this venue is congested and favors transferring to the WDWA. *See id.* Flexiworld provides statistics detailing that this Court's average time to trial for patent cases is "under 24 months." Pl.'s Resp. at 13. "In

contrast, the average time to trial in the Western District of Washington for patent cases is approximately 37 months." *Id.*

The Court agrees with Flexiworld that the time to trial, not merely the setting of a trial date, is an appreciable difference. Notably, the statistics that Amazon cites (the number of cases on the Court's docket) do not compare the most relevant metrics (the average time to trial) between this Court and the WDWA. Defs.' Mot. at 11. Accordingly, this Court finds this factor as weighing against transfer to the WDWA.

### ii. Local Interest in Having Localized Interests Decided at Home Favors Transfer

Under this factor, "[a] local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-4387-K, 2015 WL 13870507, at *4 (N.D. Tex. July 23, 2015). If both the current forum and the proposed transferee forum have a strong localized interest, this factor is neutral. *See, e.g., Broadband iTV, Inc.*, 2021 WL 1566455, at *6.

While Amazon acknowledges its presence in this District creates "a limited amount of local interest," it argues that this factor favors transfer because its location in the WDWA is its more prominent place of business. *See* Defs.' Mot. at 12; Defs.' Reply at 9. Flexiworld, in turn, cites the growing presence Amazon has undertaken recently in this District as a sign that the local interest here is at least comparable to that of the WDWA. *See* Pl.'s Resp. at 13–14.

Amazon's presence in this District is undeniable. *See id.* Amazon employs nearly 6,000 workers in Central Texas. *Id.* Amazon plans to open a 700,000 square foot fulfillment center in Waco, Texas. *Id.* Over the past decade, Amazon has created over 43,000 jobs and invested more than $16.9 billion in Texas. *Id.* Even so, the presence and magnitude of *both parties* in Washington heavily favor transferring this case to the WDWA.

Amazon has repeatedly asserted, and as far as the Court is aware, that Flexiworld is located only in the WDWA and has no presence in WDTX. *E.g.,* Defs. Reply at 9. As to the size of Amazon's presence in Texas, it is clear the Amazon's presence in the WDWA is far more significant. *Compare* Pl.'s Resp. at 14 (asserting Amazon employs 6,000 workers in the WDTX), *with* Ex. AT to Defs.' Reply (asserting Amazon employs more than 75,000 workers in the WDWA). As cited in Part I, *supra,* all Amazon Defendants share a principal place of business within the WDWA, and Flexiworld is incorporated and also has its principal place of business within the WDWA. After weighing the presence of the parties in the WDWA, the Court concludes that this factor weighs heavily in favor of transferring this case to the WDWA.

### iii. Familiarity of the Forum with the Law That will Govern the Case Factor is Neutral

Amazon politely notes that while this Court might have "some familiarity with Washington state contract law, the Western District of Washington will have more familiarity." Defs.' Mot. at 12. There is a pending Motion before the Court concerning disputed language in a contract under Washington law. ECF No. 33. Amazon believes this dispute should favor transferring the case to the WDWA. Defs.' Mot. at 12. However, as Flexiworld points out, "[t]he familiarity of the forum state with governing law should only be considered a public-interest factor weighing in favor of transfer if the governing law is 'exceptionally arcane.'" *Sirius Computer Sols., Inc. v. Sparks,* 138 F. Supp. 3d 821, 832 (W.D. Tex. 2015); Pl.'s Resp. at 14.

Amazon has not argued anything that is "exceptionally arcane" or that would be best resolved by a federal judge sitting in the WDWA. This Court is confident that through briefing and arguments presented by very capable counsel on both sides, it will be equipped to correctly understand the relevant law and correctly rule on the issue. Accordingly, the Court finds that this factor is neutral.

*iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law is Neutral*

Both parties agree that this factor is neutral. Defs.' Mot. at 13; Pl.'s Resp. at 15. The Court also agrees.

## IV. CONCLUSION

After reviewing the record, arguments, and applicable law before it, the Court finds that Amazon has met its burden in showing that the Western District of Washington is clearly more convenient than this District. Therefore, the Court **GRANTS** Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a) and **ORDERS** the above-styled case **TRANSFERRED** to the U.S. District Court for the Western District of Washington.

SIGNED this 2nd day of August, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE